## 62690. PRITCHARD v. THE STATE.

DEEN, Presiding Judge.

The defendant was indicted and convicted of criminal trespass and livestock theft.

1. A motion to suppress evidence of meat found in the defendant's home shortly after two of the prosecutor's cows were slaughtered was made on the ground that the affidavit in support of the search warrant was insufficient on its face to show probable cause for issuance of the warrant. The warrant states in part, on the

affidavit of a deputy sheriff of Atkinson County dated November 20, 1980, that the cows were killed and butchered on the owner's property on November 9; "investigation and search lead this officer to stolen livestock and beef at the residence of Roy Heflin in Lanier Co., Ga., who stated to this officer that he purchased part of stolen beef from William Pritchard at 924 Sweat St., Waycross, Ga. Further investigation by this office revealed a red pickup Ford truck with camper top was seen in the immediate area of where beef was killed and vehicle was seen by Dr. Egolff in Atkinson Co., Ga. Further investigation at 924 Sweat St., Waycross, Ga. led this officer to discover same red pickup bearing 1980 Ga. tag XF 5698 owned by William Pritchard. This was on this date, Nov. 19, 1980." The issuing magistrate testified on the hearing of the motion to suppress that the search warrant was issued based on the sworn statement, oral testimony, 14 packages of beef and a set of wire cutters. He remembered some of the testimony stated that certain facts (apparently including the statement of a witness who had seen a red truck and camper at the livestock pen on the night of the theft) had been given to the affiant by an informer identified as being "reliable" and that he had talked with him. The informer is not otherwise identified; whether or not he was the same person as the witness mentioned in the affidavit is unknown. The magistrate testified forthrightly that he did not remember all the exact details of the oral testimony. Further, we do not have all of the testimony offered at the hearing of the motion to suppress the search warrant, but only the second half, offered after a continuance and during a recess in the trial itself. From the testimony on the trial it is obvious that the officer did in fact have sufficient relevant and admissible factual information on the night of November 19 to constitute probable cause for obtention of the warrant. We cannot say that this was not placed before the magistrate under the record here. The magistrate's testimony demands the conclusion that he found the facts presented to him to constitute probable cause; that he made this decision himself and did not simply rely on the conclusion reached by the affiant. See *Reid v. State,* 129 Ga. App. 660 (2) (200 SE2d 456) (1973). He could probably consider oral testimony, and the affidavit and oral testimony must be construed together in determining probable cause. *Fowler v. State,* 128 Ga. App. 501 (197 SE2d 502) (1973). Where we do not have a complete transcript of the motion to suppress we cannot say that the testimony heard by the magistrate was legally insufficient to sustain his probable cause decision.

2. While the testimony as to coercion was in dispute at the Jackson-Denno hearing, that of the state was ample to establish that the confession given by the defendant (which he did not deny) some

three or four hours after his arrest and after he had more than once received the usual Miranda warning was in fact given and was in fact voluntary.

3. The appellant complains that statements of the co-defendant Heflin were erroneously admitted in evidence, since they were made after the conspiracy ended and not in the presence of the appellant, in contravention of Code § 38-414. The post-arrest confession of a co-conspirator who does not testify at the trial, not made in the presence of the defendant, is inadmissible. *Crowder v. State,* 237 Ga. 141, 150 (227 SE2d 230) (1976). This is because such a confession is a "desertion" by the co-conspirator and thus operates to terminate the conspiracy. However, the confession of Heflin, if one was made, was never attempted to be offered in evidence. Heflin himself did not testify; he had escaped from custody after indictment but prior to trial. The language objected to was, first, a statement by Heflin when asked, after a search of his house had discovered the meat lodged in his freezer, that he had bought it from his brother in Griffin. When told this could be checked out by radio "he changed his story completely and told me that he bought the meat from someone that had come by his house selling some beef." He was then placed under arrest. After this, Heflin said he had bought the meat from a guy in Waycross and could take the officers to his house, that his name was Pritchard. Heflin then led the officers to the defendant's house, where the red truck was seen parked out in front; based on these facts a search warrant for Pritchard was obtained.

We do not believe the statement of Heflin that he bought the meat from Pritchard amounted to a confession so as to mark a termination of the concealment feature of the conspiracy. Where the motive for the crime is not just its commission, but its commission as a prerequisite to a further act, then the conspiracy is not ended until this end is achieved, since concealment is a part of the conspiracy, the crime itself being "only an incident necessary to effect the success of the purpose for which the conspiracy was formed." *Rawlings v. State,* 163 Ga. 406, 421-422 (136 SE 448) (1926). The purpose of the crime here was not just to steal the cows or to commit a criminal trespass, but to procure and retain the meat for use or sale. Heflin's statement that he had bought the meat from Pritchard was intended not as a confession but as a concealment of the men's participation in a crime. Being an attempt to conceal the fact that a crime had been committed, it was admissible over the objection urged. *Scott v. State,* 151 Ga. App. 495 (260 SE2d 401) (1979).

4. The defendant was sworn and offered testimony as a witness in his own behalf. On cross examination the state's attorney asked who Pritchard contended he had bought the meat from which was

found in his freezer, and followed this with: "Can you tell this jury why you don't have that man here today to testify?" At another point he referred to an attempted exculpatory statement of the defendant involving Heflin's wife, and said, "Did you serve her with a subpoena to be here and tell these ladies and gentlemen about her telling you about it?" The objection was that the thrust of the question was burden shifting in inferring the guilt of the defendant from his failure to produce evidence in his own behalf. Code § 38-119 as a jury instruction is "entirely inapplicable to criminal cases. In effect, it tells the jury that if the defendant had evidence by which he might repel or rebut the charge and failed to introduce it, the presumption then arises that he is guilty. This violates the fundamental principle of criminal law that the guilt of the accused must be shown by competent evidence." *Sokolic v. State,* 228 Ga. 788, 790 (187 SE2d 822) (1972); *Mills v. State,* 133 Ga. 155, 158 (65 SE 368) (1909). But while the jury may not be instructed to draw such an inference, it may well be apprised of facts from which it arrives at the same conclusion. In *Shirley v. State,* 245 Ga. 616, 618 (266 SE2d 218) (1980), the state's attorney noted in concluding argument that the defendant claimed the deceased had attempted to rob him and that he had reported this to the lady in the detective office. The attorney asked the jury where this lady was. The Supreme Court refused to hold this argument improper because: "Although the prosecutor is prohibited from commenting on the defendant's failure to testify the prosecutor can argue to the jury the inferences to be drawn from the defendant's failure to produce witnesses who . . . would give evidence favorable to the defendant."

Since the right of cross examination is thorough and sifting, and since a defendant who elects to testify in his own behalf shall be examined and cross-examined as any other witness (Code § 38-415), the same reasons exist for asking the defendant the question as to directing the rhetorical query at the jury. These special grounds are accordingly without merit.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED OCTOBER 20, 1981.

*Elsie Higgs Griner,* for appellant.
*Vickers Neugent, District Attorney, Charles R. Reddick, Lew S. Barrow, Assistant District Attorneys,* for appellee.